IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)


MICHAEL D. LAROSA                           *

    Plaintiff                       *

v.                                          *       Case No. CCB 08-CV-2560

HARFORD COUNTY, MARYLAND,                   *
et al.
    Defendant                       *

 **************************************************

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT**


  **NOW COMES**, MICHAEL D. LAROSA, Plaintiff, through undersigned counsel, and moves this Honorable Court to deny Defendant's Motion to dismiss or in the alternative, Summary Judgment, and as grounds therefore respectfully states:


1.  Defendant has not met its burden.

2.  There are genuine issues of material fact in the case *sub judice*.

**WHEREFORE,** Plaintiff respectfully prays that this Court:

1.  Deny Defendant's Motion for Summary Judgment.

2.  Grant such other and further relief, as the Court deems appropriate.

  Respectfully,


       Jessie Lyons Crawford, Esquire
       Law Office of Jessie Lyons Crawford, LLC
       2601 Maryland Avenue
       Baltimore, Maryland 21218
       (410) 662-1230

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

MICHAEL D. LAROSA,           *

        Plaintiff           *

v.                     *     Case No. CCB 08-CV-2560

HARFORD COUNTY, MARYLAND    *
et al.
        Defendant        *
        **********************************************

## RESPONSE TO DEFENDANTS' MOTION TO DISMISS,
## OR, IN THE ALTERNATIVE,
## <u>MOTION FOR SUMMARY JUDGMENT</u>

The Plaintiff, MICHAEL D. LAROSA, by and through their undersigned counsel, files this response to the Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment, state as follows:

I.      **<u>Introduction</u>**:

Plaintiff filed a Complaint against Harford County and against three of its employees in their individual capacity and severally for several violations under Title VII and under Maryland tort law.  The employees are Schaub, Henderson, Rutledge and Stahler.  The Plaintiff was hired as a full time employee in January of 2004 and from that day on, he endured numerous verbal attacks, dangerous assignments without assistance and denial of his rights as an employee.  All these acts were done at the hands of the defendant employees named herein and were allowed to continue by the Defendant Harford County.

II.     <u>**Factual Background:**</u>

Plaintiff Michael D. LaRosa was hired in the Harford County Detention Center Work Release Program from November of 2003 until he was hired on January 4, 2003 as a full time employee for the Harford County Government.  He was hired as a laborer to work for the Department of Public Works; in the Division of Solid Waste Management.  Shortly afterwards, Frank Henderson, Deputy Director of Solid Waste, discovered that Plaintiff's child and grandchild were of mixed racial ethnicity.  In other words, the Plaintiff's step daughter and granddaughter are of African American decent. Subsequently, a series of events were set in motion by Henderson that showed a continual practice of discrimination against Plaintiff, spanning a three year period. ; which culminated in Plaintiff filing an internal "Harassment Complaint" with Harford County Government on January 9, 2006; against Henderson. Henderson and Robert Stahler, ---, both continually directed derogatory comments about my ethnicity as an Italian.  Robert Stahler called Plaintiff such names as "greasy wop", "f_ _king dego", and "bas_ _ _ d Italian".   On June 11, 2006 Harford County Government issued its decision that there was misconduct on the part of Henderson and Mr. Stahler. *See Pl. Ex. 1.*[1]

Upon Plaintiff reporting Stahler and Henderson to the Defendants' supervisors, Plaintiff was suddenly transferred from the Solid Waste Division to the Compost Recycling Division. Defendant's conduct served as a punishment to Plaintiff, and Plaintiff was made to feel he had no choice but to accept the transfer or be terminated.  Defendant, in an effort to justify its

---

[1] The attached affidavit, Exhibit 1, from the undersigned points out that the investigation was not revealed to the Plaintiff.  In order to sufficiently address this matter, the undersigned believes that a discovery process is necessary.

behavior, told Plaintiff that he was being transferred because of his problems with Stahler. *See Exhibit Complaint.*

Henderson began treating creating the hostile work environment when he (meaning Henderson) learned that Plaintiff's child and grandchild were of mixed racial ethnicity. Henderson went so far as to exclude Plaintiff from activities like work place prayer and company training that was customarily offered to all Harford County Employees In early December 2005 which began to have an effect on the Plaintiff's health. *See Pl. Ex. 3.* Henderson began to create a hostile work environment for Plaintiff in an attempt to reverse a Human Resources decision to grant Plaintiff Holiday Pay**.**  Unable to persuade Plaintiff to accept time off rather than holiday pay, Henderson became angry, hostile, and enraged ordering that Plaintiff be sent home without full day pay.  The next day Henderson ordered Barry Lely (a supervisor) to transfer Plaintiff from the Compost Division to the Landfill Division for work duties.  These new duties were more strenuous, and ultimately lead to Plaintiff's work related injuries. *See Complaint.*

Henderson was at all times aware of the internal complaint that Plaintiff had filed against him on January 9, 2006. *See Complaint.*

On January 10, 2006, Henderson specifically had Plaintiff assigned to work under the supervision of Robert Rutledge in the landfill area.  This was done as a means of harassing and retaliating against Plaintiff.  Thus, Henderson arranged to have Plaintiff assigned the lonely duty of picking up paper on what is commonly known as the "hill".  The "hill" is located in a remote and isolated area on a very steep grade; consisting of a series of steep slopes surrounding the actual dumpsite.  This duty was normally assigned to two employees but solely to Plaintiff in this instance. *See Exhibit 4.*

4

While performing these duties and under such conditions, Plaintiff fell down the muddy, wet, steep slope; landing on a pile of jagged rocks.  Plaintiff lay there in pain until he was rescued by helicopter and transported to Shock Trauma. *See Ex. 5.* After years of denying treatment to the Plaintiff, the Worker's Compensation Commission heard the evidence on March 23, 2009 and ruled to allow medical treatment for the Plaintiff.  *See Ex. 6.*  To date, the Plaintiff is not at maximum medical improvement point.  *Ex. 7.*

On February 10, 2006, Plaintiff returned to work following the aforementioned work related injuries. Upon return, Plaintiff was under doctor's orders to take prescribed medications and do only light duties work.  However, Defendant's employees and/or agents frequently rotated Plaintiff from one assignment to another as a means of harassing Plaintiff.  The movement caused continued physical problems for the Plaintiff because of the light duty order and lack of regard for Plaintiff's injuries. Joseph P. Rutherford, P.H. was witness to many occasions of harassment by the Defendant.  See Ex. --- This continued until the final decision of Harford County was issued relative Plaintiff's internal complaint of discrimination against Henderson and Stahler. *See Def. Ex. 2 and P. Ex. 1.* On June 11, 2006 Harford County Government issued its decision, relative Henderson's conduct, stating that "*an investigation was conducted by Jeff McCormack, Investigator for Harford County Government*", and its "*[F]indings and conclusion of the investigation resulted in misconduct.  This is now a personnel matter and will be dealt with accordingly." See Ex.8.*

Henderson, as well as Defendant's immediate supervisors were well aware of the medications Plaintiff were prescribed.  In fact, Plaintiff had provided his supervisor, Rutledge,

with a list of all medications prior to the finding of Henderson's misconduct on June 11, 2006. One of the medications included a narcotic medication, oxycotton, prescribed for extreme pain.

Two days after the finding of misconduct (on June 13, 2006), Plaintiff was called into the office and told that he had to take a police escorted drug test or be fired.    This was an apparent effort of Henderson as well as Defendant's other agents, servant, and/or employees, to have Plaintiff randomly drug tested as justification for terminating Plaintiff.  *See Def. Ex. 5.*

However, Defendants did not follow Harford County's well establish policy for random drug testing and attempted to pressure and threaten Plaintiff into consenting to be tested; notwithstanding their actual knowledge that Plaintiff was taking prescribed medication which included a narcotic while on light duty status. See Ex. 9. The policy requires the supervisor to complete a form entitled "Reasonable Suspicion Observation Form", which was not completed. *See Ex. 10*. When the Plaintiff refused to submit to the test, he was fired on the spot without any further discussion.  *See Def. Ex. 5.*

Plaintiff believed that the Defendants were seeking an opportunity to terminate him as a pretext, and aimed to justify their actions by a dirty drug test. This is confirmed by Defendant Henderson's behavior after the termination.   Defendant Henderson approached Joseph P. Rutherford, a Crew Chief at Harford County Solid Waste, and thanked him "for getting rid of" the Plaintiff. *See Ex. 11*. Neither Henderson nor any of the Defendant supervisors were disciplined for these infractions against Plaintiff. [2]

## III. STANDARD OF REVIEW

---

[2] Again, this is speculation which can be confirmed with further discovery.  This is important to the issue of whether the Defendant County condoned the behavior of Henderson against the Plaintiff.

### A.  <u>MOTION TO DISMISS</u>

Under Fed.R.Civ.P. 12(b)(6), dismissal is proper where a claim fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the legal sufficiency of the plaintiff's complaint, and, if the complaint is legally insufficient, 'authorizes a court to dismiss a claim on the basis of a dispositive issue of law[.]'" *Keeler v. Mayor & City Council of Cumberland*, 928 F.Supp. 591, 594 (D.Md. 1996), citing *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). The purpose is not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.2ed 480, 483 (4th Cir. 2006) (citing Edwards v. Cit of Goldsboro, 178 F. 3d 231, 243-244 (4th Cir. 1999). The Federal Rules of Civil Procedure do not require a claimant to set out in detail facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Rather, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc*., 248 F. 3d 321, 325-26 (4th Cir. 2001.  Therefore, a motion to dismiss under Rule 12(b)(6)  "should only be granted if, after accepting all well-pleaaded allegations in the plaintiff's complaint as true, it appears certain that the Plainitff cannot prove any set of facts in support of his claim entitling him to relief. Id.

### B.  <u>MOTION FOR SUMMARY JUDGMENT</u>

At the outset, Plaintiff rely on Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary

judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).*

"The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." *Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).* However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson, 477 U.S. at 256.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial --whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also *Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)*(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (*citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)*. In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, 477 U.S. at 322.* Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. *See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992).* In reviewing the supported underlying facts, all inferences must be viewed in the light most

favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).*

### IV.    The Motion for Summary Judgment is Premature

It is well-settled that pursuant to Rule 56(f) the Court may continue a motion for summary judgment "[s]hould it appear from the affidavits of a party  opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition . . . ." The party opposing summary judgment must file an affidavit that "particularly specifies legitimate needs for further discovery." *Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995)* (emphasis added); accord *Higgins v. Food Lion, Inc., 197 F. Supp.2d 364, 369 (D. Md. 2002)* (Williams, J.)(finding "no legitimate need to extend discovery"); *Phillips v. General Motors Corp., 911 F.2d 724, 1990 WL 117981 at 6 (4th Cir. 1990)* (unreported) ("The affidavit requirement in Rule 56 serves the salutary purpose of forcing the nonmoving party to identify for the court the specific reasons for its inability to mount an opposition to the summary judgment motion.") (emphasis supplied). The opposing party is also required to show why it cannot presently obtain affidavits or other factual material to oppose the present motion.

*See National Coalition for Students with Disabilities Educ. And Legal Defense Fund v. Scales, 150 F. Supp.2d 845, 848 (D. Md. 2001) (Williams, J.) (citing Pine Ridge Coal Co. v. Local 8377, United Mine Workers of America, 187 F.3d 415 (4th Cir. 1999)).*The nonmovant must describe the information he expects to uncover through the requested discovery  and how that information would preclude summary judgment. *See Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 245-46 (4th Cir. 2002); Nguyen, 44 F.3d at 242.* If the nonmovant offers nothing but speculation as to the existence of evidence to oppose summary judgment, denial of the Rule 56(f) motion is proper. *California v. Campbell, 138 F.3d 772, 779-80 (9th Cir. 1998).* A

Rule 56(f) affidavit is more than a mere pro forma request for discovery. The adverse party must "concretely" show the "specific reasons" why the requested discovery is necessary and useful. *Strange v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (C.A.D.C. 1989); see also Resolution Trust Corp. v. North Bridge Assoc., 22 F.3d 1198, 1203 (1st Cir. 1994)* (a Rule 56(f) affidavit must make a sufficient proffer that sets forth a "plausible" basis to believe: that specific facts exist, that those facts can be collected, and that those facts will influence the decision on the motion for summary judgment); *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric, 840 F.2d 985, 988* (1st Cir. 1988) (a Rule 56(f) affidavit must show some "realistic prospect" that the facts can be obtained.) The denial of a Rule 56(f) request is appropriate where Plaintiff merely wants to conduct a fishing expedition for evidence that may be helpful to his case. *See Morrow v. Farell, 187 F. Supp. 2d 548, 551 (D. Md.) (Chasanow, J.), aff'd, 50 Fed. Appx. 179 (4th Cir.2002)*. Here Plaintiff has showm a significant basis that pursuant to Rule 56 of the Federal Rules of Civil Procedure, discovery is needed.

At this time, the Plaintiff believes that engaging in the Discovery Process will provide the information, evidence and deposition testimony to assist in preparing affidavits. *See Ex. 2.*

V.     **ARGUMENT**

   A.  **FEDERAL CLAIMS**

   1.  **PLAINTIFF CAN DEMONSTRATE A PRIMA FACIE CASE OF DISCRIMINATION IN VIOLATION OF TITLE VII.**

A plaintiff can establish a prima facie case of race discrimination under Title VII by establishing that (1) he or she belongs to a racial minority; (2) he or she applied and was qualified for a job for which the employer was seeking applicants; (3) he or she was rejected for

the position despite his or her qualifications; and (4) the position remained open after his or her rejection and the employer to seek applications from other people with similar qualifications to the plaintiff. *McDonnell Douglas v. Green,* 411 U.S. 792, 802 (1973). In Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), the Supreme Court stated that"[t]he burden of establishing a prima facie case of disparate treatment is not onerous."

After the plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the plaintiff's rejection. Id. If the employer sustains the burden, the plaintiff then has the opportunity to present evidence showing that the employer's stated reason for the rejection was merely pretextual. Id.; see also McDonnell Douglas, 411 U.S. at 807; Lindahl, 930 F.2d at 1437 ("The defendant's articulation of a legitimate nondiscriminatory reason serves . . . to shift the burden back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual.") (quoting Lowe, 775 F.2d at 1008).

McDonnell Douglas test merely requires that a plaintiff raise an inference of disparate treatment to establish a prima facie case, not actual proof of such treatment.

Under McDonnell Douglas, to establish his prima facie case, the plaintiff need not prove that discrimination was the motivating factor in his dismissal. All he must do is raise an inference that such misconduct occurred. The first prong is satisfied by the fact that the Plaintiff's daughter and granddaughter are of African American Decent.  After learning this information both Henderson and Stahler both harassed the Plaintiff in front of other employees and discriminated against and even punished. Also, Mr. Larosa is of  Italian decent.  He was discriminated against because of his natural origin. The fact that the Defendant failed to follow

its own policy and the fact that the Plaintiff has continually complained to the Defendant Harford County about Henderson and Stahler is enough to raise an inference of discrimination.

### 2. PLAINTIFF CAN MEET HIS BURDEN OF PROOF FOR RETALIATION

In order to establish a prima facie case of retaliation the plaintiff must prove first, that she engaged in protected activity; second, that an adverse employment action was taken against him; and third, that there was a causal link between the protected activity and the adverse employment action. *Laughlin v. Metro. Washington Airports*, 149 F.3d 253, 258 (4th Cir. 1998). The first element of the Plaintiff's prima facie case is met by proof that in January of 2006 the Plaintiff filed a complaint alleging that his supervisors retaliated against him concerning unequal Holiday pay. *See Exhibit 2*[3]. Thereafter, an investigation was completed by the Defendant where it was found that misconduct on the part of the Defendant did in fact occur. See Exhibit---.  Two days later, the Defendant alleged to have observed Mr. Larosa and decided to send him for a drug test. As stated in the facts, the Defendant knew that Mr. Larosa was under his doctor's prescribed medication and on light duty.  Mr. Larosa challenged the decision to order a drug test because of that fact and because his supervisor was not the person ordering the test.  Under the Defendant's own drug test policy, the Plaintiff's supervisor was the authorized person to order the tests.  The ordering of the drug test and the termination of the Plaintiff for declining to undergo the drug test under the circumstances were excuses created by the Defendant to at the time so that the Defendant can retaliate against the plaintiff for making the claim of discrimination against Henderson. As stated previously the record supports the Plaintiff complaining to his superiors about the discrimination and the completion of the investigation, were in close time frame to the

---

[3] Additional Discovery is necessary to provide an appropriate Affidavit relating to the specifics of the complaint, investigation and the discipline imposed by the Defendant on its supervisors.

decision to terminate the Plaintiff. Clearly there was a causal link between the Plaintiff filing his discrimination claims against his supervisor, the demand for a drug test by a non supervisor, and the immediate termination without due consideration.

3. **THE PLAINTIFF CAN MEET HIS BURDEN OF ESTABLISHING A PRIMA FACIE CASE OF HOSTILE WORK ENVIRONMENT**

In order to establish a prima facie case as to a hostile work environment claim, the plaintiff must project evidence sufficient to establish the following four elements: 1) unwelcome conduct; 2) the conduct was based on a prior protected activity; 3) the conduct was sufficiently pervasive or severe to alter the conditions of employment and to create a hostile environment, and 4) some basis for imputing liability to the defendant. *Matavia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 266 (4th Cir. 2001) (citing Smith v. First Union Nat'l Bank, 202 F.3d 234, 241 (4th Cir. 2000)).* The continuous verbal attacks by Henderson and Stahler, the denial of his earned and entitled income, the refusal to allow the Plaintiff to participate in functions at work are all examples of the conduct that created a hostile work environment.  The protected activity was the ongoing investigation for the worker's compensation claim and the allegations against Henderson and Stahler.

## B.  STATE CLAIMS:

### 1.  PLAINTIFF'S CLAIMS ARE APPROPRIATE FOR STATE COURT.

The Local Government Tort Claims act requires that the Plaintiff provide notice of an action for unliquidated damages within 180 days after the injury. *See LGTA, Cts. & Jud. Proc. § 5-304.* Typically, a plaintiff must notify the municipality to be sued; however, if Notice is not satisfied, the Local Government Tort Claims Act does not mandate a dismissal. *Downey v. Collins, 866 F. Supp. 887 (D.Md. 1994).* In the event that notice is challenged the plaintiff must

show that it substantially complied with the notice requirement.  *Carter v. Jess, 179 F. Supp. 2d 534 (D. Md. 2001)*.  The notice provision of the Local Government Tort Claims Act may be waived if the plaintiff can show good cause for failure to comply and if the defendant cannot demonstrate prejudice therefore.       "Good cause exists when a claimant prosecutes a claim `with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.'" *Wilbon, supra, 172 Md.App. at 205, 913 A.2d 678 (quoting Heron v. Strader, 361 Md. 258, 271, 761 A.2d 56 (2000))*. Courts have considered the following factors generally to have been good cause: "`[1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), [2] serious physical or mental injury and/or location out-of-state, [3] the inability to retain counsel in cases involving complex litigation, ... [4] ignorance of the statutory notice requirement[,]'" or misleading representations made by representatives of the local government. *White, 163 Md.App. at 152, 877 A.2d 1129 (quoting Heron, supra, 361 Md. at 272, 761 A.2d 56). 962 A.2d 1025; Ransom v. Leopold, 183 Md. App. 570 (2007)*.  The determination of the existence or nonexistence of prejudice and good cause for the purposes of the notice requirement have been clearly committed to the discretion of the court.  *Downey v. Collins, 866 F. Supp. 887 (D. Md. 1994)*.

The Plaintiff has filed tort actions against the employees named in this suit.  In this case, the Plaintiff alleges several tort claims that arose out of his employment and termination of his employment from Harford County.  Since June 13, 2006, the termination of the Plaintiff from his employment, the Plaintiff has filed a variety of state agency claims in which the Senior Attorneys and in some cases, with the County Counsel, for Harford County litigated the case. The County Attorney supervises the attorneys that defended the county in the state claims.  Those claims include:

1. On or around June 18, 2006, the Plaintiff filed a claim for Unemployment Benefits which was contested in Deborah S. Duvall, Esq., Senor County Attorney for Harford County represented Harford County.  *See Defendant's Exhibit 11*. Attorney Duvall is also one of the attorneys representing Harford County on this case.

2. On November 24, 2006, the Plaintiff filed a claim with the EEOC in which Senior County Attorney Duval, the county's position. *See Pl. Ex.12*. She is also defending the county in this cause of action.

3. Additionally, the Plaintiff filed a worker's compensation claim in which Karen Kruegar, Ms. Duvall and the County Attorney were informed of and managing for the Defendant County.

Further, the Plaintiff has actively pursued his causes of action since the onset of the termination and have dealt directly with the county attorney's office. The issue raised in the complaint has already been investigated and documented by the Defendant.  Thus, no prejudice can be shown.  Thus, the notice requirement should be waived.


**2. THE PLAINTIFF HAS PLEAD SUFFICIENT FACTS TO SUPPORT HIS WORKER'S COMPENSATION RETALIATION CLAIM**

**a.  Mr. Larosa states a claim for wrongful discharge.**

Adler v. American Standard Corp., 291 Md. 31, 432 A.2d 464 (1981), the Court of Appeals adopted an exception to the well settled common law rule that a person employed for an indeterminate period, that is on an at-will basis, can be discharged by his or her employer at any time for a good reason, a bad reason or for no reason at all. The Court held that:

... Maryland does recognize a cause of action for abusive discharge [1] by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy....

Id. at 47, 432 A.2d 464.

While announcing the existence of a cause of action for wrongful discharge under these limited circumstances, [2] the Court recognized the difficulty in determining clear public policy absent some expression of that policy in the constitutions, legislative enactments or prior judicial or administrative decisions. Id. at 45, 432 A.2d 464.

Ewing v. Koppers Co., Inc., 312 Md. 45, 537 A.2d 1173 (1988), the Court held that an employee who was fired for filing a worker's compensation claim had a cause of action for wrongful discharge. Discharging an employee solely because that employee filed a worker's compensation claim [568 A.2d 839] claim contravenes the clear mandate of Maryland public policy. The Legislature has made a strong statement to that effect in making such conduct a criminal offense, and our perception of the magnitude of the public interest in preserving the full benefits of the worker's compensation system to employees, and deterring employers from encroaching upon those rights, is equally strong.  Id. at 50, 537 A.2d 1173.

In the Defendant was apprised of the fact that Mr. LaRosa was ingesting medication prescribed by his doctor for the injuries he received in the injury at work.  After the injury the Plaintiff was caused to withstand a series of attacks on his ethnicity, family members of African descent and for having been injured. *See Exhibit 13.*

**b.  Mr. Larosa states a claim for negligent hiring.**

Appellant's complaint alleged that Defendant Harford County owed plaintiff a duty in the hiring and retention of employees. She alleged that the County breached that duty in hiring and retaining certain officers who discriminated on the basis of ethnicity and race and that the county undertook the acts alleged herein with actual malice.    *Manders v. Brown, 101 Md.App. 191, 216, 643 A.2d 931 (1994)*, after quoting section 5-321(b)(1) of the Courts and Judicial Proceedings Article, the court stated:

In this context, malice consists of the intentional doing of a wrongful act without legal justification or excuse. An act is malicious if it is done knowingly and deliberately, for an improper motive and without legal justification.   *See also Williams v. Prince George's County, 112 Md.App. 526, 550-51, 685 A.2d 884 (1996).*

Appellant has failed to show any facts that, if proven, can establish malice on the part of Kennedy or the individual

**Summary Judgment on Intentional Infliction of Emotional Distress Claim**

*Harris v. Jones, 281 Md. 560, 380 A.2d 611 (1977)*, the Court of Appeals recognized the tort of intentional infliction of emotional distress. In order for a plaintiff to recover for intentional infliction

of emotional distress, he or she must satisfy the following elements:

(1) The conduct must be intentional or reckless;

(2) The conduct must be extreme and outrageous;

(3) There must be a causal connection between the wrongful conduct and the emotional distress;

(4) The emotional distress must be severe.

Id. at 566, 380 A.2d 611.

The trial court granted summary judgment in favor of appellees on appellant's intentional infliction of emotional distress claim. It reasoned: "I don't think these four counts are alleged or I

17

don't think there are sufficient facts alleged to fulfill all four of these particular requirements, especially the extreme and outrageous part."

The Court of Appeals stated *Batson v. Shiflett, 325 Md. 684, 734, 602 A.2d 1191 (1992)*:

For conduct to meet the test of "outrageousness," it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Whether the conduct complained of meets this test is, in the first instance, for the court to determine; in addressing that question, the court must consider not only the conduct itself but also the "personality of the individual to whom the misconduct is directed." This high standard of culpability exists to screen out claims amounting to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" that simply must be endured as part of life. Henderson and Stahler went beyond mere insults.  They intentionally publically humiliated the Plaintiff on a regular basis. See Exhibit 13.

WHEREFORE, the Plaintiff moves this Honorable Court to Deny the Defendants' request to dismiss and or for Summary Judgment.

Sincerely,
/s/
Jessie Lyons Crawford, Esquire
Law Office of Jessie Lyons Crawford, LLC
2601 Maryland Avenue
Baltimore, Maryland 21218
(410) 662-1230

## CERTIFICATE OF SERVICE

I CERTIFY that on May 22, 2009, I mailed a postage prepaid copy of the foregoing response to Karen J. Kruger, Senior Assistant County Attorney and Deborah S. Duvall, Senior Assistant County Attorney, 220 South Main Street, Bel Air, MD. 21015.

Sincerely,

Jessie Lyons Crawford, Esquire