**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| MICHAEL D. LAROSA | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. CCB-08-2560 |
| HARFORD COUNTY, MARYLAND, | : | |
| et al. | : | |
| | : | |

...o0o...

**MEMORANDUM**

Now pending before the court is a motion to dismiss or, in the alternative, for summary

judgment, filed by defendants Harford County, Maryland (the "County"), Janet L. Schaub, Frank

Henderson, and Robert Rutledge. Plaintiff Michael D. LaRosa asserts claims under Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1981, Md.

Ann. Code art. 49B, § 14,[1] and state common law. The issues in this case have been fully briefed

and no hearing is necessary. For the reasons stated below, the defendants' motion, construed as a

motion for summary judgment, shall be granted with respect to Counts I, II, IV, V, VI, VII, and

VIII and denied with respect to Count III.[2]

**BACKGROUND**

The following facts are presented in the light most favorable to Mr. LaRosa. Mr. LaRosa

initially began working for the Department of Public Works in the Division of Environmental

Affairs, Bureau of Solid Waste Management in November 2003, as part of the Harford County

---

[1] On October 1, 2009, this section was repealed and replaced by the substantively similar Md. Code Ann. State Gov't § 20-602. *See* H.B. 51, 2009 Gen. Assem., 426th Sess. (Md. 2009).
[2] Count III arises under Title VII, which extends liability to employers, but not to employees or supervisors in their individual capacities. *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). Accordingly, all individual defendants will be dismissed and the County will remain the sole defendant in this case.

Detention Center Work Release Program. In January 2004, following Mr. LaRosa's release from incarceration, the Division hired him as a full-time temporary employee.

Mr. LaRosa is of Italian-American descent and has a child and grandchild of mixed-race ancestry. Mr. LaRosa claims that his co-worker, Robert Stahler, directed racial and ethnic slurs such as "greasy wop," "f—king dego," and "bast—d Italian" toward him. Mr. LaRosa asserts that his supervisors were fully aware of this harassment, but took no action and publicly condoned Mr. Stahler's derogatory remarks. After Mr. LaRosa complained to his supervisors about Mr. Stahler's comments, he was transferred from the Solid Waste Division to the Compost Recycling Division.[3] The defendants allegedly explained that they were transferring Mr. LaRosa because of his problems with Mr. Stahler. Mr. LaRosa felt that he had no choice but to accept the transfer or be terminated.

Mr. LaRosa also claims that upon learning of the racial background of his child and grandchild, Frank Henderson, Deputy Director of Environmental Affairs, began to treat Mr. LaRosa differently, excluding him from workplace activities such as prayer and training sessions normally offered to all employees. According to Mr. LaRosa, Mr. Henderson actively approved of Mr. Stahler's harassing conduct.  In December 2005, Mr. Henderson pressured Mr. LaRosa to accept a day off instead of receiving holiday pay, as granted by the Harford County Department of Human Resources. When Mr. LaRosa refused to comply with this request, Mr. Henderson became angry and hostile and sent Mr. LaRosa home without receiving his pay for the full day. The following day, Mr. Henderson ordered Barry Lemly, a supervisor, to reassign Mr. LaRosa from the Compost Division to the Landfill Division. Joseph P. Rutherford, Crew Chief of Solid Waste Management, states in his affidavit that he objected to the transfer, which he claims occurred in January 2006, because he had projects he wanted Mr. LaRosa to perform. (*See* Pl.'s

---

[3] Mr. LaRosa does not specify when this transfer occurred.

Resp. Ex. 13 ¶ 10.)  According to Mr. LaRosa, his new duties in the Landfill Division were more strenuous. Mr. Rutherford, however, states that Mr. LaRosa complained to him on January 10, 2006 about being assigned busy work such as cleaning the break room three times in one day. (*See id.*)

In response to this harassing behavior, Mr. LaRosa filed an internal complaint against Mr. Henderson with the Harford County Department of Human Resources on January 9, 2006. Although Mr. LaRosa claims that the complaint included allegations of harassment based on race and national origin, Jeffrey McCormack, an investigator for Harford County, stated in his affidavit that Mr. LaRosa only alleged "harassment" with respect to the holiday pay dispute and made no mention of any racial or national origin-based motive. (*See* Defs.' Summ. J. Mem. Ex. 2 ¶¶ 5-7.)[4] On January 10, 2006, Mr. Henderson ordered Mr. LaRosa to work under Robert Rutledge's supervision on the "hill," which Mr. LaRosa described as a remote and isolated dumpsite located at the top of a very steep hill. Mr. Henderson had Mr. LaRosa pick up paper on the "hill" by himself, a duty normally assigned to two employees for safety reasons. (*See id.*; Pl.'s Resp. Ex. 13 ¶ 11.)  Mr. LaRosa claims that Mr. Henderson assigned him this duty to harass and retaliate against him. Indeed, Mr. LaRosa asserts that despite the fact that Mr. Henderson knew or should have known that the "hill" was muddy and slippery, he ordered him to work there without any means of communication or transportation. Mr. LaRosa slipped while performing his duties and fell on a pile of rocks, severely injuring his back. A helicopter eventually rescued Mr. LaRosa and flew him to a hospital's shock trauma division. Mr. LaRosa was awarded workers' compensation and received continued medical treatment and prescription medication for his lower back pain.

---

[4] Neither party provided a copy of the complaint.

Upon returning to work on February 10, 2006, Mr. LaRosa was ordered by his doctor to continue to take the prescribed medications and to perform only light duties. Mr. LaRosa notified Mr. Henderson, as well as his immediate supervisors, that he was on heavy medication. Mr. LaRosa claims that the defendants frequently rotated his assignments, causing him physical problems, as a means of harassing him. Mr. Rutherford states in his affidavit, for example, that while on light duty, Mr. LaRosa was assigned the task of assembling a booklet. (Pl.'s Resp. Ex. 13 ¶ 7.) Before the project was completed, however, Mr. Henderson told Janet Schaub, Acting Director of Human Resources, that Mr. LaRosa had finished the task and asked her to place him elsewhere. (*Id.*) After Mr. LaRosa was reassigned, Mr. Henderson had another staff member complete the booklet assignment. (*Id.*) On June 11, 2006, the Harford County Department of Human Resources issued its decision in response to Mr. LaRosa's January 9, 2006 complaint. Ms. Schaub sent Mr. LaRosa a letter stating that Mr. McCormack's investigation into his "harassment and retaliation charge" against Mr. Henderson resulted in a finding of misconduct. (Pl.'s Resp. Ex. 8.) The letter concluded by stating that this was "now a personnel matter" and would be dealt with accordingly. (*Id.*) According to Mr. McCormack, the finding of misconduct related only to the issues of holiday pay, scheduling problems, assignments, and training issues. (*See* Defs.' Summ. J. Mem. Ex. 2 ¶¶ 6, 8.) Mr. McCormack contends that he found no evidence that Mr. Henderson's conduct was motivated by unlawful discrimination or retaliation. (*Id.* at ¶ 8.)

Mr. LaRosa claims that two days after the Human Resources' decision, on June 13, 2006, he was called into the office and told he had to take a police-escorted drug test or face termination. The defendants assert that the drug test was called for pursuant to Human Resources' policy, which allows supervisors to order drug tests based upon their reasonable

suspicion that an employee has violated the County's prohibition on substance abuse in the workplace. (*See* Defs.' Summ. J. Mem. Ex. 6 at 2.) According to an internal memorandum written by Mr. Rutherford on June 12, 2006, Mr. Rutherford interviewed Mr. LaRosa on June 10, 2006, in response to complaints from co-workers Brenda Cheatham and Rex McDowell about his inappropriate behavior at the Tollgate Yard Trim Site. (*See* Defs.' Summ. J. Mem. Ex.4.) The co-workers reported that Mr. LaRosa had been "in people's faces" and had been sitting on the ground with his head in his hands. (*Id.*) Mr. Rutherford stated that he observed the following conditions during his interview with Mr. LaRosa: "pupils dilated, slurred speech and at times rambling on about unrelated issues, general confusion, unsteady on his feet, pale and sweating, easily agitated and scratching his face, arms and head incessantly." (*Id.*) Accordingly, he ordered Mr. LaRosa to leave the site for the day.

On Mr. LaRosa's next workday, June 13, 2006, Human Resources sent Tonye Cornbrooks to meet with Mr. LaRosa. Ms. Cornbrooks reported to Ms. Schaub that Mr. LaRosa admitted to taking prescription medications for his back injuries, but denied taking these medications while at work. (Defs.' Summ. J. Mem. Ex. 5.) Ms. Cornbrooks also described her observations of Mr. LaRosa's behavior as consistent with those of Mr. Rutherford on June 10. Ms. Cornbrooks notified her supervisor in the County's Law Department, Debbie Duvall, who contacted Human Resources. At Human Resources' request, Ms. Cornbrooks and two security personnel escorted Mr. LaRosa to Occupational Medical Services for drug testing. According to Ms. Cornbrooks, Mr. LaRosa asked several questions about the drug test regarding which drugs could be discovered and whether his prescription medication would trigger a positive result. Mr. LaRosa was told that his prescription drugs could be confirmed by the drug test. Ms. Cornbrooks also informed him that his refusal to be tested could result in the termination of his employment.

In response to Mr. LaRosa's demand to speak with his attorney, Ms. Cornbrooks offered Mr. LaRosa the opportunity to call his attorney from a telephone within the Law Department. Mr. LaRosa initially refused, demanding to speak with his attorney in person, but eventually called his attorney from his cell phone. Unable to reach his attorney, Mr. LaRosa was given the opportunity to speak with his union representative, Jack Yost, but Mr. LaRosa declined this offer. Despite Ms. Cornbrooks's warnings of termination, Mr. LaRosa refused to participate in the drug test and was eventually escorted out of the building. Later that day, Ms. Schaub wrote him a letter informing him of her decision to terminate his employment based on his refusal to undergo the drug test. (*See* Defs.' Summ. J. Mem. Ex. 7.)[5]

Mr. LaRosa asserts that the drug test contravened the County's drug testing policy because he was pressured and threatened into consenting and because supervisors never completed a required "Reasonable Suspicion Observation Form." (*See* Defs.' Summ. J. Mem. Ex. 10.) Mr. LaRosa produced a copy of this form, which provides a checklist of bases for reasonable suspicion and states that "this checklist is to be completed when an incident has occurred which provides reasonable suspicion that an employee is under the influence of a prohibited controlled substance..." (*Id.*) The defendants do not appear to have completed this form, but Ms. Cornbrooks did draft an internal memorandum specifying her observations that precipitated her decision to order a drug test. (*See* Defs.' Summ. J. Mem. Ex. 5.) The County's policy regarding testing for substance abuse does not mention any such form, stating only that a supervisor's reasonable suspicion that an employee has violated controlled substances prohibitions based on "specific, contemporaneous, articulable observations concerning the

---

[5] Mr. LaRosa was denied unemployment benefits because of his "gross misconduct," a finding that was upheld in an Unemployment Insurance Appeals Decision. (*See* Defs.' Summ. J. Mem. Exs. 8-9.)

appearance, behavior, speech or body odors of the employee" is grounds to test the employee for use of controlled substances. (Defs.' Summ. J. Mem. Ex. 6 at 2.)

The County policy also states that an employee who refuses to submit to testing is subject to termination from employment. (*Id.* at 3.) Mr. LaRosa claims that the defendants, knowing that he was on strong pain medication, requested the drug test as a pretext for terminating him. To this effect, Mr. LaRosa offers evidence that approximately two days after he was terminated, Mr. Henderson congratulated Mr. Rutherford "for getting rid of Mike LaRosa." (*See* Defs.' Summ. J. Mem. Ex. 11 ¶ 6.)

Mr. LaRosa filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which referred the case to the U.S. Department of Justice, Civil Rights Division. On July 2, 2008, the Civil Rights Division issued Mr. LaRosa a letter declining to make any judgments on the merits of his charge and notifying him of his right to sue within 90 days. (*See* Pl.'s Compl. Ex. 1.) On September 18, 2008, Mr. LaRosa's attorney sent the County notice of Mr. LaRosa's intention to bring tort claims against it. (Defs.' Summ. J. Mem. Ex. 12.) Mr. LaRosa subsequently filed a complaint in this court on September 30, 2008. In opposition to Mr. LaRosa's claims, the defendants primarily argue that: (1) Mr. LaRosa does not demonstrate a prima facie case of discrimination or retaliation under either Title VII or 42 U.S.C. § 1981[6] and (2) Mr. LaRosa's state law claims against the County and its employees may not proceed because of his failure to comply with the notice requirement of the Local Government Tort Claims Act. I will address these issues in turn.

---

[6] Although the defendants do not address Mr. LaRosa's harassment claim at great length in their motion, the court understands the defendants' motion to challenge all claims in the complaint. (*See* Defs.' Mot. to Dismiss or for Summ. J. 2 (requesting that "judgment be entered in [defendants'] favor dismissing all claims of Plaintiff ").) Furthermore, the defendants specifically contest Mr. LaRosa's harassment claim in a footnote arguing that the harassment claim is "conclusory" and fails to state a claim for relief under Title VII or 42 U.S.C. § 1981. (*See* Defs.' Summ. J. Mem. 6 n.8.) Therefore, the court will consider the merits of Mr. LaRosa's harassment claim.

## ANALYSIS

Where matters outside the pleadings are considered by the court, a defendant's motion to dismiss will be treated as one for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(b) & (c); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).  Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**A.  Title VII and 42 U.S.C. § 1981 Claims**

Mr. LaRosa asserts three separate claims under Title VII and 42 U.S.C. § 1981[7]: (1) race and national origin discrimination, (2) harassment, and (3) retaliation. The court analyzes Title VII claims under the three-pronged burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, a plaintiff alleging Title VII discrimination must first make out a prima facie case of that discrimination.  If he succeeds in carrying this initial burden, then "the burden shifts to the employer . . . 'to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).  Once such a reason is provided, the burden shifts back to the plaintiff to demonstrate that the given reason was a pretext for unlawful discrimination. *Id.*

*i.   Race and National Origin Discrimination*

In order to establish a prima facie case of race or national origin discrimination, a plaintiff must show that: "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Lettieri*, 478 F.3d at 646 (quoting *Hill*, 354 F.3d at 285). The defendants do not dispute that Mr. LaRosa is a member of a protected class. Thus the court will presume that he is, by virtue of his Italian-American ancestry and mixed-race family.

---

[7] The elements for claims of workplace discrimination are the same under both § 1981 and Title VII. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 n.1 (4th Cir. 2004).

Mr. LaRosa alleges that he suffered two adverse employment actions: (1) his reassignments to different work divisions and (2) his termination. The Fourth Circuit has defined an adverse employment action as a "discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James*, 368 F.3d at 375 (internal quotations omitted). Although Mr. LaRosa's termination unambiguously qualifies as an adverse employment action, his work reassignments may not. "The mere fact that a new job assignment is less appealing to the employee…does not constitute adverse employment action." *Id.* Mr. LaRosa must demonstrate that his reassignments had a significant detrimental effect, such as a "decrease in compensation, job title, level of responsibility, or opportunity for promotion." *Id.* (quoting *Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999)).

Mr. LaRosa's reassignments to the Compost Division and then to the Landfill Divisions may have been undesirable to Mr. LaRosa, but they do not appear to have had any significant detrimental effect. Mr. LaRosa does not assert that these job transfers resulted in any change in benefits or opportunities for promotion. Although Mr. LaRosa suffered a workplace injury after his transfer to the Landfill Division, this injury was the result of an isolated incident and not generally more dangerous job duties inherent in the Landfill Division. Therefore, Mr. LaRosa's work reassignments do not constitute adverse employment actions.

The termination of Mr. LaRosa's employment, however, is clearly an adverse employment action. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006) (referencing termination as an example of an adverse employment action). Thus Mr. LaRosa must next prove that his job performance leading up to his termination met the County's legitimate expectations. Given Mr. LaRosa's inappropriate behavior on June 10, 2006, when Mr. Rutherford received complaints from co-workers and observed behavior indicative of substance

abuse, and his continued suspicious behavior on June 13, 2006, when Ms. Cornbrooks observed

him, the County was justified in ordering a drug test pursuant to its substance abuse policy.

Although the County's reasonable suspicion form was never filled out, Ms. Cornbrooks's

internal memorandum detailing the basis for her reasonable suspicion of Mr. LaRosa's drug use

contained the same substantive information as was called for in the form. In addition, the

County's policy never refers to this form or mandates its use. Thus the County had a legitimate

expectation that Mr. LaRosa would not take controlled substances while at work and would

submit to a drug test pursuant to County policy should there be reasonable suspicion of his drug

use. When Mr. LaRosa refused to submit to the test, therefore, he was not meeting legitimate

expectations for his performance and the County was justified in terminating him. *See e.g.*,

*Wright v. Winnebago Indus., Inc.*, 551 F. Supp. 2d 836, 847 (N.D. Iowa 2008) (finding that an

employee who violates an employer's substance abuse policy is not meeting legitimate

expectations). Moreover, even if he had established a prima facie case, he has not demonstrated

that the County's reason for terminating him was pretextual. Accordingly, his employment

discrimination claim, Count I, must fail.

### ii.   Harassment

To succeed on a claim for a hostile work environment under Fourth Circuit law, the

employee must show that the harassment was: 1) unwelcome, 2) based on a protected

characteristic, 3) sufficiently severe or pervasive to alter the conditions of employment, and 4)

there was some basis for imposing liability on the employer. *See Spriggs v. Diamond Auto Glass,*

242 F.3d 179, 183-84 (4th Cir. 2001). Although the first element is subjective, the other elements

are objective, based on a "reasonable person" standard. *Pueschel v. Peters*, 577 F.3d 558, 565

(4th Cir. 2009). In determining whether conduct is sufficiently severe and pervasive, the courts

look to the "totality of the circumstances," including 1) the frequency of the discriminatory conduct, 2) the severity of the conduct, 3) whether the conduct was physically threatening, humiliating, or a mere offensive utterance, and 4) whether it unreasonably interferes with an employee's work performance. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998).

Mr. LaRosa seems to allege that the County's request for drug testing, Mr. Stahler's use of degrading anti-Italian names for Mr. LaRosa, and Mr. Henderson's unfair treatment constitute severe and pervasive harassment. For the reasons stated above, the request for drug testing was not an instance of harassment as the defendants fairly applied the County's controlled substances policy. Although Mr. Stahler's name-calling and Mr. Henderson's decision to exclude Mr. LaRosa from workplace prayer and company training are instances of harassment, they also fail to support a hostile work environment claim.

Mr. LaRosa claims that Mr. Henderson excluded him from prayer and trainings after learning of his mixed-race child and grandchild. Yet Mr. LaRosa provides no dates as to when Mr. Henderson either discovered this information about Mr. LaRosa's family or excluded him from activities. The only date provided that could relate to this allegation comes from Mr. Rutherford's affidavit, in which he states that Mr. Henderson instituted a new policy of excluding part-time employees[8] from training classes on January 20, 2006, after Mr. LaRosa and an African-American co-worker had made requests for these classes. Even assuming that Mr. LaRosa implicitly refers to this January 20 decision in his non-specific allegations of exclusion, however, a one-time exclusion that appears to have been more of a blanket policy than a decision directed solely at Mr. LaRosa is not severe and pervasive harassment.

---

[8] Mr. Henderson refers to Mr. LaRosa as a part-time employee. (*See* Pl.'s Resp. Ex. 13 ¶ 8.)

Similarly, the names that Mr. Stahler allegedly called Mr. LaRosa were certainly offensive, yet the name-calling was insufficiently severe or pervasive to state a hostile work environment claim. Mr. LaRosa asserts that Mr. Stahler called him a "greasy wop," "f—cking dego," and "bast—d Italian" several times, but does not specify how often the name-calling occurred over what length of time.[9] In *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306 (4th Cir. 2008), the Fourth Circuit found that frequent anti-Muslim name-calling directed at the plaintiff was sufficiently severe and pervasive. Yet the harassment in *Sunbelt Rentals* consisted of much more than simple name-calling: the plaintiff was ridiculed for praying during the day and had his timecard hidden frequently, his computer equipment unplugged, and his business cards defaced. *Id.* at 316-17. In addition, the plaintiff's co-workers called him offensive names on a daily basis. *Id.* at 316. Although the court found this harassment to be severe and pervasive, it noted that "[a]ny of the above incidents, viewed in isolation, would not have been enough to have transformed the workplace into a hostile or abusive one. No employer can lightly be held liable for single or scattered incidents." *Id.* at 318.

In this case, the fact that a single coworker called Mr. LaRosa derogatory names at various times during his employment is insufficient to establish that the harassment was severe or pervasive. Although Mr. LaRosa alleges that Mr. Henderson publicly condoned Mr. Stahler's remarks, he does not provide any facts that might describe how Mr. Henderson did so. Even if the name-calling is considered together with the January 20, 2006 decision to exclude Mr. LaRosa from future trainings, these infrequent incidents of harassment are not sufficiently severe and pervasive to support a claim of workplace harassment. Therefore, the court will grant the defendants' motion as to Mr. LaRosa's hostile work environment claim, Count II.

---

[9] The only mention of when the name-calling took place appears in Mr. LaRosa's complaint, which states that it occurred throughout 2003. Given that Mr. LaRosa began working for the Division in November 2003, however, this leaves only a two-month period in which Mr. Stahler could have called Mr. LaRosa names.

*iii. Retaliation*

In order to state a prima facie case of retaliation, Mr. LaRosa must demonstrate that: (1) he engaged in a protected activity; (2) the employer acted adversely against him; and (3) the protected activity and the adverse action were causally connected.  *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Mr. LaRosa claims that in response to his filing of an internal complaint against Mr. Henderson, his former employer engaged in two different instances of retaliation: (1) assigning Mr. LaRosa to pick up papers on the "hill" on January 10, 2006, and (2) terminating his employment on June 13, 2006.

The first question is whether Mr. LaRosa engaged in a protected activity by lodging an internal complaint on January 9, 2006. "Protected activities" fall within two categories: opposition and participation. *See EEOC v. Navy Federal Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Mr. LaRosa claims that the internal complaint he filed on January 9, 2006 was protected activity because he complained of the racial and nationality-based harassment he had experienced. (*See* Pl.'s Resp. Ex. 1 ¶ 2.) The defendants, however, argue that Mr. LaRosa's complaint only dealt with the issue of unequal treatment with respect to holiday pay and made no mention of race or nationality-based discrimination or harassment. (*See* Def.'s Summ. J. Mem. Ex. 2 ¶¶ 5, 7.) No party has produced a copy of Mr. LaRosa's internal complaint and Mr. LaRosa's attorney states in her affidavit that discovery is needed to confirm its substance. (*See* Pl.'s Resp. 12 n.3, Ex. 2 ¶¶ 1-3.) Thus there appears to be a factual dispute as to the nature of the allegations in Mr. LaRosa's internal

complaint that precludes a determination at the summary judgment stage that Mr. LaRosa did not

engage in a protected activity. Accordingly, the court will construe the facts in the light most

favorable to Mr. LaRosa, the non-moving party, and presume that the internal complaint was

indeed protected activity.

The next question then is whether the defendants acted adversely toward Mr. LaRosa by

assigning him to work on the "hill" and by eventually terminating him. While Mr. LaRosa's

termination clearly is an adverse employment action, adverse employment actions are not limited

to "ultimate employment decisions"; rather, they include actions that are "harmful to the point

that they could well dissuade a reasonable worker from making or supporting a charge of

discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 67 (2006); *see also*

*Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) (citing *Burlington* for the

proposition that "a title VII retaliation plaintiff need not allege or prove an ultimate adverse

employment action"). Therefore, as long as Mr. Henderson's decision to assign Mr. LaRosa to

the "hill" was harmful to Mr. LaRosa and would discourage a reasonable employee from filing

future complaints, this job assignment also could serve as an adequate adverse action for the

purposes of a retaliation claim.

In this case, the job assignment was harmful to Mr. LaRosa, because he was ordered to

work alone on a steep landfill slope which, according to Mr. Rutherford, was against standard

operating procedures requiring at least two people to work on the slope for safety reasons. (*See*

Pl.'s Resp. Ex. 13 ¶ 11.) Indeed, this breach of safety procedures ultimately resulted in an injury

which kept Mr. LaRosa out of work for about a month. A dangerous and unconventional

assignment as this is alleged to be would likely dissuade a reasonable employee from lodging a

discrimination complaint. Mr. Henderson's decision to assign Mr. LaRosa alone to pick up paper

on the "hill" thus qualifies as an adverse employment action for the purposes of a retaliation claim under Title VII.

The next question is whether a causal connection has been established between the filing of the internal complaint on January 9, 2006 and either the January 10, 2006 assignment to the "hill," or the June 13, 2006 termination. To prove this causal connection, Mr. LaRosa must be able to show that the County acted against him "*because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original). Evidence of temporal proximity between the protected activity and the adverse action may be sufficient to state a prima facie case of causality. *See Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006). The temporal proximity, however, must be "very close" to be treated as indirect proof of causation. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Mr. Henderson's decision to assign Mr. LaRosa to work on the "hill" the day after Mr. LaRosa filed the internal complaint[10] is close enough in proximity to the alleged protected activity to establish sufficient proof of causation to state a prima facie case of retaliation. The defendants have not articulated any legitimate reason for assigning Mr. LaRosa to the "hill" by himself on January 10, and thus Mr. LaRosa need not prove anything further to allow the retaliation claim to survive this motion for summary judgment. Therefore, the court will deny the defendants' motion for summary judgment without prejudice on Mr. LaRosa's claim of retaliation involving the January 10, 2006 work assignment and allow discovery with respect to this one claim.[11]

---

[10] Mr. LaRosa claims that Mr. Henderson was aware of his January 9, 2006 complaint.

[11] The court would limit the scope of discovery to this one claim even if the affidavit submitted by plaintiff's counsel were construed as a motion for further discovery under Fed. R. Civ. P. 56(f). *See Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006) (noting that a Rule 56(f) motion "is properly denied when the additional evidence sought to be discovered would not create a genuine issue of material fact sufficient to defeat summary judgment") (citing *Strag v. Board of Trustees, Craven Comm. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995)).

However, Mr. LaRosa has not proffered evidence that his filing of the internal complaint in January caused his termination in June. Even assuming that Mr. LaRosa could state a prima facie case of retaliation based on his termination, he has not shown how the County's legitimate reason for terminating him based upon his refusal to submit to a drug test is a pretext for retaliation. The decision to terminate Mr. LaRosa involved three different individuals: Mr. Rutherford, who initially reported Mr. LaRosa's inappropriate behavior; Ms. Cornbrooks, who communicated her similar observations to her supervisor and accompanied Mr. LaRosa to the drug test; and Ms. Schaub, who ultimately made the decision to terminate Mr. LaRosa's employment. Mr. LaRosa has not presented any evidence suggesting that any of these decisionmakers acted with an ulterior motive. To the contrary, Mr. Rutherford has submitted an affidavit in support of Mr. LaRosa in this case. (*See* Pl.'s Resp. Ex. 13.) In addition, the fact that Mr. Henderson later congratulated Mr. Rutherford for helping to fire Mr. LaRosa does not demonstrate that the drug test was pretextual, as Mr. Henderson was not involved in the decision to order the drug test or to terminate Mr. LaRosa.  Accordingly, Mr. LaRosa's claim of retaliation with respect to his eventual termination will be denied.

### B.  State Law Claims

Mr. LaRosa asserts five state law causes of action against the County and its two employees: retaliation for filing a workers' compensation claim, wrongful discharge, negligent retention, intentional infliction of emotional distress ("IIED"), and malicious use of process, Counts IV-VIII. Under the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1), "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." The notice must be in writing and "state the time, place,

and cause of the injury." § 5-304(b)(2). Mr. LaRosa sent the County a notice of claim letter on

September 18, 2008, well beyond 180 days from the dates on which Mr. LaRosa claims he was

harassed and eventually terminated. (*See* Defs.' Summ. J. Mem. Ex.12.)

 Mr. LaRosa argues that he nonetheless satisfied the LGTCA's notice requirement through

his "substantial compliance" with the statute. As the Maryland Court of Appeals has explained,

"[w]here the purpose of the notice requirements is fulfilled, but not necessarily in a manner

technically compliant with all of the terms of the statute, this Court has found such substantial

compliance to satisfy the statute." *Faulk v. Ewing*, 808 A.2d 1262, 1272 (Md. 2002). To

substantially comply with the LGTCA's notice requirement, the plaintiff must give "requisite

and timely notice of facts and circumstances giving rise to the claim." *Id.* at 1272-73 (internal

quotations and citations omitted). Mr. LaRosa has the burden of proving that he has substantially

satisfied the notice requirement. *See White v. Prince George's County*, 877 A.2d 1129, 1134

(Md. App. 2005) (noting that the plaintiff failed to meet his burden of demonstrating substantial

compliance).

 According to Mr. LaRosa, his unemployment benefits, EEOC, and workers'

compensation claims provided the County Attorney with adequate notice because Senior

Assistant County Attorney Deborah Duvall was informed of all of them. Mr. LaRosa has failed

to produce any of these initial claims; instead, he has presented only the Workers' Compensation

Commission Order, the Unemployment Insurance Appeals Decision, the Department of Justice's

right-to-sue letter, and a letter from the County to the EEOC in response to his EEOC charge.

(*See* Pl.'s Resp. Exs. 6, 11, 12; Pl.'s Compl. Ex. 1.) This court has attempted to piece together

the facts and circumstances alleged by Mr. LaRosa in each of his administrative complaints to

determine whether the County had sufficient notice of the state law claims it now opposes. It

appears that none of these administrative complaints adequately described the facts and circumstances giving rise Mr. LaRosa's current state law claims.

The facts underlying Mr. LaRosa's allegation that the defendants retaliated against him because of his workers' compensation award on April 11, 2006 do not arise in any of the three administrative claims he filed. The retaliation that Mr. LaRosa alleged in his EEOC charge must have been related to his internal complaint of harassment in order to fall within the purview of Title VII. His workers' compensation claim itself would have predated any alleged retaliation[12] and thus could not have detailed the facts underlying this claim. Finally, Mr. LaRosa does not appear to have raised this allegation in his appeal of the denial of unemployment benefits. Therefore, defendants could not have had prior notice of the facts and circumstances underlying this claim to satisfy the LGTCA.

Mr. LaRosa bases his wrongful discharge claim on his belief that the County improperly ordered a drug test. Yet there is no evidence that Mr. LaRosa challenged the underlying validity of the drug test in any of the claims he filed previously. Mr. LaRosa's unemployment benefits appeal focused on whether he had committed misconduct, not whether the County had unfairly subjected him to drug testing. In addition, Mr. LaRosa has presented no evidence that either his EEOC complaint or his workers' compensation claim challenged the validity of the drug test. Therefore, Mr. LaRosa did not substantially comply with the notice requirements as to his wrongful termination claim.

Mr. LaRosa's negligent retention claim alleges that the County breached its duty of care by negligently retaining Mr. Henderson after the internal investigation resulted in a finding of misconduct against Mr. Henderson. The factual issue of whether the County should have

---

[12] Mr. LaRosa's assignment to the "hill" could not have been made in retaliation for filing the workers' compensation claim as it occurred before the claim was ever filed.

terminated Mr. Henderson does not appear to have been raised in the workers' compensation, unemployment benefits, or EEOC claims. The letter from the County to the EEOC in response to Mr. LaRosa's EEOC charge, which provides the greatest information concerning the substance of that charge, does not address the question of whether the County should have disciplined Mr. Henderson. (*See* Pl.'s Resp. Ex. 12.) Indeed, Mr. LaRosa makes no such claim in his Title VII claims in the present case. Thus, Mr. LaRosa has failed to substantially comply with the LGTCA's notice requirements for his negligent retention claim.

Mr. LaRosa's three prior administrative claims also did not provide adequate notice to the County of his IIED claim. Assuming that Mr. LaRosa alleged workplace harassment in his EEOC charge, there is no evidence that Mr. LaRosa alleged that the harassment met the requisite levels of intent and outrageousness to comprise an IIED claim.

Finally, it does not appear that Mr. LaRosa alleged in any of his three administrative complaints that the County contested his application for unemployment insurance out of malice. As this claim does not deal with discrimination on the basis of race or national origin, or retaliation for alleging such discrimination, Mr. LaRosa would not have described the facts underlying his malicious use of process claim in his EEOC charge. Furthermore, although Mr. LaRosa appealed the denial of unemployment benefits, the appeals decision makes no mention of any claim of malice on part of the County in opposing Mr. LaRosa's application. Mr. LaRosa's workers' compensation claim could not have described any of these facts or circumstances underlying this claim because the facts relevant to the workers' compensation claim occurred prior to Mr. LaRosa's termination. (*See* Pl.'s Resp. Ex. 6.) Therefore, Mr. LaRosa has failed to demonstrate substantial compliance with the LGTCA's notice requirements for any of his state law claims.

Mr. LaRosa next argues that even if he did not substantially comply with the notice requirement, the requirement should be waived, because the defendants have failed to show that they were prejudiced by his failure to give timely notice. The LGTCA permits courts to waive the notice requirement "upon motion and for good cause shown," unless "the defendant can affirmatively show that its defense has been prejudiced by lack of required notice." § 5-304(d). Before the defendants' burden to demonstrate prejudice arises, therefore, the plaintiff must first establish that good cause exists to excuse its noncompliance with the notice requirement. *See Curtis v. Pracht*, 202 F. Supp. 2d 406, 414 (D. Md. 2002). Although Mr. LaRosa has listed a number of circumstances generally constituting good cause, he has failed to allege that any factors constituting good cause exist in his case. Thus the court may not waive the notice requirement. Accordingly, Mr. LaRosa's state law claims, Counts IV-VII, are barred by the LGTCA and will be dismissed.

## **CONCLUSION**

For the foregoing reasons, the defendants' motion, construed as a motion for summary judgment, will be granted in part and denied in part. A separate Order follows.


March 26, 2010                                                    /s/
Date                                                  Catherine C. Blake
                                                      United States District Judge